UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

03 - 12390 NG

| | |
|---|---|
| DEMEREW W. YOHANNES, )<br>Plaintiff, )<br> )<br>v. )<br> )<br>CENTRAL PARKING SYSTEMS, INC., )<br>Defendants    MAGISTRATE JUDGE _____ )<br> ) | C.A. No._____<br><br>COMPLAINT<br>AMOUNT $____<br>SUMMONS ISSUED ___<br>LOCAL RULE 4.1 ___<br>WAIVER FORM ___<br>MCF ISSUED ___<br>BY DPTY CLK ___ |

### INTRODUCTORY STATEMENT

This is an action for damages and other relief arising out of the employment of Plaintiff Demerew Yohannes by Defendant Central Parking Systems, Inc. The claims include race discrimination, and differences in the terms, conditions, and privileges of employment based on his race and color.

### JURISDICTION

1. This Court has jurisdiction over this matter based upon 28 U.S.C. §1331 to adjudicate claims arising from federal law, and upon 42 U.S.C. §2000e, *et. seq.*, to adjudicate civil rights claims.

### PARTIES

2. Demerew Yohannes ("Plaintiff") is an individual and a resident of Waltham, Middlesex County, Massachusetts.

3. Central Parking Systems, Inc. ("Defendant") is a national parking service duly organized pursuant to the laws of the State of Tennessee, doing business in the Commonwealth of Massachusetts with offices located at 125 Lincoln Street, Boston, Suffolk County, Massachusetts.

### FACTS

1

4. Plaintiff began working for Defendant on July 16, 1992, in Hartford, Connecticut, and received progressive increases until he was promoted to the position of Supervisor until transferred to Boston, Massachusetts, on June 4, 2001. At the time of his termination on June 4, 2001, he was an Assistant Manager.

5. When hired, Plaintiff possessed a valid Connecticut driver's license since Plaintiff lived and worked in Hartford, Connecticut at the time.

6. On June 4, 2001, Plaintiff moved to Massachusetts. He possessed a valid Connecticut driver's license until it expired sometime in February 2003. Plaintiff was aware of the expiration.

7. Sometime in March 2003, Plaintiff attempted to get a Massachusetts driver's license. When he did so, he was told that there was a lien on his license going back to an incident with a rental car in 1998. That was the first time Plaintiff was informed that there was a lien on his license going back to an incident with a rental car in 1998. This was the first time Plaintiff was aware of the lien.

8. Plaintiff subsequently contacted his insurer since he believed this was a mistake. Plaintiff also informed his site supervisor about his license situation. As an Assistant Manager, Plaintiff did *not* operate motor vehicles as part of his job. In addition, he continued to work while he tried to resolve the matter. To be exact, either Plaintiff's wife transported him to work while he tried to resolve the matter, or he took public transportation.

9. Before Plaintiff's termination and during that same period, *two* other white supervisors were experiencing similar, if not identical, problems, *i.e.*, one co-worker's license was *revoked* for driving under the influence and the latter was allowed to continue after his license was restored by the Department of Motor Vehicles. Plaintiff believes he was not given that opportunity because of his race, color, and national origin (Ethiopian).

2

10. Sometime in May, 2003, Defendant instructed the site supervisor to verify the drivers' licenses of valet drivers. Plaintiff was not a valet driver at that time. Thereafter, Defendant instructed Assistant Managers to verify their drivers' licenses. Edwin Crean ("Mr. Crean"), Plaintiff's Manager, instructed him to contact the Human Resources Manager.

11. On or about May 16, 2003, Plaintiff again informed the Human Resources Manager that he did not have a valid driver's license.

12. On May 21, 2003, Plaintiff met with the Human Resources Manager and the Senior Director of Operations. Plaintiff explained that he attempted to procure a Massachusetts driver's license when he learned that there was a lien against him. Because of the lien, he was unable to get a license; however, he was putting forth efforts to do so. The meeting ended and Plaintiff returned to work. In fact, he worked on May 22, 25, 26, 27, 28, and 29, and June 1, 2003. On June 2, 2003, Defendant informed Plaintiff that he was discharged.

13. Defendant's Employee Handbook states in pertinent part at Page 5, *Employment Records:* ... It is very important that your records be kept accurate and up-to-date. You should report any change in status to your supervisor in writing. The information will be sent to the office to update your file.

*Be Sure to Report Any Changes In:*

- Your name, address and telephone number;
- Your marital status or the number of your dependents;
- A change in INS status;
- A change of beneficiary for Company life insurance or Profit Sharing §401(k) Savings Plan; or
- Any additional education or training received since submitting your original application....

Defendant discharged Plaintiff on June 2, 2003, for allegedly being dishonest, misrepresenting the facts, and/or falsifying records regarding his driver's license. Nothing in that provision refers to an employee's driver's license. Furthermore, that provision *does not* provide for any disciplinary action for failure to comply. On this basis, that provision is not applicable to Plaintiff's discharge.

14. Defendant's Handbook also provides for possible disciplinary action that could result in discharge for "dishonesty", "misrepresentation of facts", and "falsification of records". No substantial evidence has been presented by Defendant to demonstrate that Plaintiff falsified *any* employer record. Further, Defendant retains discretionary authority to determine what disciplinary action to take on a case-by-case basis decided after the fact. Under these circumstances, Defendant *failed* to demonstrate that Plaintiff knowingly violated a rule or policy, or to show that the rule or policy is uniformly enforced and that Plaintiff was not subjected to differences in the terms, conditions, and privileges of his employment based on his race, color, and national origin, or to show that the rule or policy is uniformly enforced.

15. In sum, Defendant expected Plaintiff to present a valid driver's license as a requirement of his job. Defendant did not make that expectation known to Plaintiff as a requirement of his job. As an Assistant Site Manager, Plaintiff did not operate motor vehicles. In March, 2003, Plaintiff informed Mr. Crean that his driver's license had expired. He explained the problem he had when he tried to get a Massachusetts license and learned that there was a lien against him. Plaintiff continued to work. In May, 2003, Plaintiff was asked to produce his driver's license for verification. Plaintiff reminded Mr. Crean that he did not have one. Mr. Crean instructed Plaintiff to contact the Human Resources Manager. On May 16, 2003, Plaintiff contacted the Human Resources Manager and explained the problem relating to his license. Plaintiff further stated that he was trying to get the lien issue resolved so that he could get a

4

license. Between May 16, 2003 and June 6, 2003, Plaintiff worked several days. On June 2, 2003, Defendant discharged Plaintiff without giving him an opportunity to obtain a *new* license in order to retain his job. Plaintiff believes that this was based on his race, color, and national origin and amounts to differences in the terms, conditions, and privileges of his employment.

## LEGAL CLAIMS

### COUNT ONE
### DISCRIMINATION WITH RESPECT TO THE TERMS, CONDITIONS, AND PRIVILEGES OF EMPLOYMENT ON THE BASIS OF RACE, COLOR, NATIONAL ORIGIN
### VIOLATION OF 42 U.S.C. §2000e-2

16. Plaintiff hereby realleges the allegations set forth in paragraphs 1 through 15 above, and incorporates them as if fully set forth herein.

17. Plaintiff has timely satisfied all prerequisites to lawsuit under Title VII.

18. Defendant discriminated against Plaintiff with respect to the terms, conditions, and privileges of employment by denying him an opportunity to renew his driver's license in violation of 42 U.S.C. §2000e-2.

19. As a result thereof, Plaintiff suffered loss of income, loss of professional opportunities, and other losses including severe and extreme emotional distress and mental suffering.

WHEREFORE, Plaintiff demands judgment against the Defendants for damages including, but not limited to:

   (1) Compensatory damages for non-pecuniary losses;

   (2) Punitive damages;

   (3) Damages for emotional distress;

   (4) Exemplary damages;

(5) Attorney's fees, costs, and such other relief to which he is entitled and as this Court deems just and proper.

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY OF ALL CLAIMS SO TRIABLE.

Respectfully submitted,
Plaintiff Demerew Yohannes,
By his attorneys,

_____
Stephen B. Hrones
BBO No. 242860
HRONES & GARRITY
Lewis Wharf–Bay 232
Boston, MA 02110-3927
617/227-4019

Dated: November 25, 2003