UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEMEREW W. YOHANNES,<br><br>        Plaintiff,<br><br>v.<br><br>CENTRAL PARKING SYSTEMS, INC.<br><br>        Defendant. | Civil Action No. 03-12390 NG |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Defendant Central Parking terminated the employment of Plaintiff, Demerew Yohannes, an Assistant Manager at Central Parking's North End valet parking facility, after Central Parking discovered during a driver's license audit that Plaintiff (i) did not have a valid driver's license, (ii) had not had a valid license for several months, (iii) was unable to get a license due to a prior motor vehicle accident that resulted in a "lien" on his license, (iv) had known about this problem for months; and (v) failed to inform his employer of the situation (until he was caught). Amazingly, even though Plaintiff admits to the conduct in question, he brought this action claiming race, color and national origin discrimination pursuant to Title VII. In light of undisputed facts establishing that Plaintiff is unable produce any evidence of pretext or unlawful discrimination, this case should be dismissed on summary judgment.

# FACTS[1]

Defendant Central Parking Corporation ("Central Parking") operates pay parking facilities throughout Massachusetts. Plaintiff worked for Central Parking as an Assistant Manager at its North End Garage, a valet parking facility where Central Parking employees, not customers, park customer cars. His employment was at-will. Stmt. ¶¶1-3.

It was a condition of employment at Central Parking that all management employees, including Plaintiff Demerew Yohannes, have valid driver's licenses. Valet drivers and other employees whose duties included driving cars were also required to have valid driver's licenses. When Plaintiff applied for a position with Central Parking's predecessor company, he indicated on his application that he had a valid driver's license. Stmt. ¶¶4-5.

In May, 2003, Central Parking conducted a driver's license audit to confirm that its valet facility employees had valid driver's licenses. All valet drivers and management of valet facilities were asked to produce a valid driver's license. Plaintiff was unable to do so. Stmt. ¶¶6-7.

In a May 22, 2003 meeting with Edwin Crean, Senior Operations Director of Central Parking, and Karen Poliseno, Human Resources Manager for Central Parking, Plaintiff admitted that he had <u>never</u> had a Massachusetts driver's license, despite having worked as an Assistant Manager for Central Parking in Massachusetts since the fall of 2001. Plaintiff stated that he previously had a Connecticut driver's license, which expired in February, 2003. Plaintiff further stated that when he tried to get a Massachusetts driver's license, he was informed that there was

---

[1] The facts set forth in this Memorandum are also contained in Defendant's Concise Statement of Material Facts. With respect to most facts this Memorandum will simply refer to the corresponding paragraphs in the Statement of Material Facts, hereinafter referred to as "Stmt."

2

a "lien" on his license and that he could not, therefore, get a Massachusetts license at that time. Stmt. ¶¶8-10.

It is undisputed that Plaintiff's duties at the North End Garage included moving cars, and Plaintiff admits that when he worked at the North End Garage he did from time to time move and park customer cars by driving them. Stmt. ¶¶11.

As a management employee, Plaintiff was expected to enforce Central Parking's policies, as well as obey them. After learning from Plaintiff in May, 2003 that Plaintiff had never had a valid Massachusetts driver's license despite having moved to Massachusetts in June, 2001 (two years ago), that Plaintiff's Connecticut driver's license expired in February, 2003, and that Plaintiff learned in March, 2003 that he was unable to get a Massachusetts driver's license, Mr. Crean became convinced that Plaintiff essentially had lied to his employer concerning the status of his driver's license. Plaintiff was clearly in violation of Central Parking's requirement that management employees have valid driver's licenses. Further, Mr. Crean believed that Plaintiff had misrepresented facts and falsified records by working without a valid driver's license and keeping silent regarding the status of his driver's license, especially since he was a management employee who was charged with enforcing company policies. Mr. Crean therefore recommended to Michael Beck, Regional Manager, that Plaintiff's employment with Central Parking be terminated. Mr. Beck approved this action, and Plaintiff's employment was terminated as of June 2, 2003. Stmt. ¶¶14-19.

On August 27, 2003, the Equal Employment Opportunity Commission dismissed Plaintiff's charge of discrimination against Central Parking, and issued a written decision supporting its conclusion that "the evidence fails to indicate that a violation of the law occurred." Stmt. ¶27.

3

## ARGUMENT

**I.     SUMMARY JUDGMENT STANDARD**

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "Even in employment discrimination cases 'where elusive concepts such as motive or intent are at issue,' this standard compels summary judgment if the non-moving party 'rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" *Feliciano de la Cruz v. El Conguistador Resort & Country Club*, 218 F.3d 1, 5 (1st Cir. 2000) (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)). Summary judgment should be granted here as the relevant material facts regarding Plaintiff's termination are undisputed and Plaintiff cannot establish any evidence of unlawful discrimination.

**II.    DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S DISCRIMINATION CLAIM**

To prove a claim under Title VII,[2] where, as here, there exists no direct evidence of discrimination, the familiar *McDonnell Douglas* burden shifting paradigm applies. Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action. Once the defendant meets its burden, which is not onerous, the burden shifts back to the plaintiff to persuade the court that the defendant's proffered reason for its action was not the real reason, but a pretext for discrimination. *Benoit v.*

---

[2] Plaintiff asserts his single count discrimination claim pursuant to Title VII, 42 U.S.C. §2000e-2, and does not assert any state law claims.

4

*Technical Manufacturing Corp.*, 331 F.3d 166, 173-174 (1st Cir. 2003) (further citation omitted); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Because Plaintiff lacks a reasonable expectation of establishing a *prima facie* case or proving pretext for discrimination at trial – indeed, Plaintiff has absolutely no evidence of pretext – summary judgment should be granted.

A. **Because Plaintiff Lacked A Valid Driver's License He Was Not Qualified For His Job, And Therefore Cannot Prove A *Prima Facie* Case.**

As part of his *prima facie* case of discrimination, Plaintiff must prove that he was qualified for the job in question. *See Kosereis v. Rhode Island*, 331 F.3d 207, 212-213 (1st Cir. 2003) (further citation omitted). Possessing a valid driver's license indisputably was required for the position of Assistant Manager at a valet facility. Indeed, Plaintiff admits that in his role as the Assistant Manager of the North End valet parking garage, he moved customer cars.[3] Plaintiff also admits that he did not have a valid driver's license at the time of the May, 2003 audit, that he had never had a Massachusetts license, that he had not had any driver's license at all since his Connecticut license expired in February, 2003 (months prior to his termination), and that at the time of the audit, he was unable to obtain a new license because there was a "lien" on his license.

As Plaintiff did not have a valid driver's license, he was not qualified for his position as Assistant Manager of a valet parking facility. Having a valid driver's license is an obvious prerequisite for a job that required an employee to drive customer cars. Indeed, even Plaintiff's own witness, Solomon Lemma, a former Central Parking manager, testified that a valid driver's

---

[3] Indeed, in making this admission in sworn deposition testimony that he drove customer cars as part of his job, Plaintiff <u>directly contradicted his prior sworn statement to the EEOC</u> (attached as <u>Exhibit</u> F to the Kahn Aff.) in which he claimed that he "never had reason to drive (valet park) customer cars." Despite Plaintiff's false allegation, the EEOC found no evidence of discrimination, and dismissed Plaintiff's claim; Defendant urges this Court to do the same. *See Blizard v. Fielding*, 572 F.2d 13, 16 (1st Cir. 1978) (EEOC findings of fact are entitled to great deference); *see also Hilton v. Wyman-Gordon Co.*, 624 F.2d 379, 383 (1st Cir. 1980) (EEOC findings may be significant evidence; probative force in individual cases is left to the determination of the trial court).

5

license was a requirement for management employees, and that employees hired for valet locations had to have a license. Stmt. ¶32.[4] Moreover, that Central Parking conducted a driver's license audit in May 2003 alone substantiates Central Parking's requirement that management employees at valet locations have valid driver's licenses. Plaintiff cannot plausibly establish that he was qualified for his job where he conceded that he did not possess a key job prerequisite -- a valid driver's license. As such, Plaintiff's claim must be dismissed for failure to establish a *prima facie* case.

### B. Because Plaintiff Has No Reasonable Expectation of Proving Pretext For Discrimination at Trial His Claim Must Fail.

The undisputed record demonstrates Central Parking terminated Plaintiff's employment for legitimate, non-discriminatory reasons: following the May 2003 driver's license audit Plaintiff admitted that (i) he did not have a valid driver's license, (ii) he had known for many months that he could not get one because there was a "lien" on his license, (iii) he had never had a Massachusetts driver's license, and (iv) he had been without any driver's license at all since his Connecticut license expired in February, 2003. Given these admissions, Central Parking concluded that Plaintiff essentially had lied to it by concealing the truth concerning his lack of a valid driver's license, and that it could not tolerate such conduct in a management employee who was supposed to enforce company policies as well as obey them. In light of the ample evidence of a legitimate reason for Plaintiff's termination, the burden shifts to Plaintiff to produce sufficient evidence to prove that this reason is a mere pretext for unlawful discrimination. In other words, to survive summary judgment, Plaintiff must provide evidence from which a reasonable factfinder could infer that the reason given by Defendant for his termination was a

---

[4] Even Plaintiff's hostile witness, former Central Parking employee Mussie Gizaw, agreed that a valid driver's license was a condition of employment for valet employees. Stmt. ¶34.

6

pretext, *i.e.*, not the real reason, and that the real reason was unlawful discrimination (in this case, alleged discrimination based on race, color, or national origin). Plaintiff's "evidence" of pretext falls woefully short of that mark and, as such, his discrimination claim must be dismissed.

        1.      **Plaintiff Cannot Show That He Was Treated Less Favorably Than Any Similarly Situated Employee.**

As Plaintiff testified in his deposition, his solitary claim of discrimination boils down to his belief that he was treated less favorably than two other employees in not being provided an "opportunity" to obtain a valid driver's license after Central Parking discovered through the license audit that he did not have one.[5] Although Plaintiff cannot make this showing (as will be discussed below), his claim misses the point – Central Parking did not terminate Plaintiff's employment merely because he lacked a valid driver's license. Rather, Central Parking fired Plaintiff because it believed that Plaintiff concealed from it his lack of a valid driver's license and essentially had lied to it. Central Parking believed that such conduct was unacceptable in a manager charged with enforcing its policies (as well as complying with them) and therefore terminated his employment.

Moreover, Plaintiff cannot show that he was treated differently from others not in his protected categories. As the First Circuit has stated, to successfully prevail in a disparate treatment claim, "…a plaintiff must show 'that others similarly situated to him in all relevant respects were treated differently by the employer.'" *Kosereis*, 331 F.3d at 214, *citing Conward*

---

[5] Plaintiff testified that the basis for his claim against Central Parking is that he believes a former Central Parking employee, Guiseppe Verdi, and another unnamed Central Parking employee, were treated differently than he was in regard to not having a valid driver's license. Yohannes Dep. I, pp. 12, 25; Yohannes Dep. II, p. 105 (excerpts from the deposition of Demerew Yohannes are attached as Exhibit A to the Kahn Affidavit, Exhibit 4 to the Concise Statement of Material Facts). Central Parking obviously cannot rebut the claim concerning the other unspecified employee, but believes that Plaintiff may be referring to Abdurashid Abdulahi or Rafael German, valet driver employees who are not similarly situated to Plaintiff, as will be discussed below.

*v. Cambridge School Committee*, 171 F.3d 12, 20 (1st Cir. 1999) (affirming summary judgment in favor of employer on claim of national origin discrimination). Although "the examples of disparate treatment 'need not be perfect replicas, they must closely resemble one another in respect to relevant facts and circumstances.'" *Id.*

Here, Plaintiff cannot present <u>any</u> evidence that similarly situated employees were treated more favorably. Central Parking has produced evidence that as a result of the May, 2003 driver's license audit, it learned that three employees were unable to produce valid driver's licenses: Plaintiff, an Assistant Manager, and two valet drivers, Abdurashid Abdulahi[6] and Rafael German. Valet drivers Abdulahi and German indisputably were not "similarly situated" to Plaintiff: (1) both valet drivers were "rank and file" employees, not managers expected to carry out Central Parking policies (as well as comply with them); (2) both valet drivers had previously had <u>Massachusetts</u> licenses (not out-of-state licenses) which had expired, (3) both valet drivers were able to obtain a valid Massachusetts license quickly (within a week) and without any legal impediments, such as lien which made it unclear whether Plaintiff could ever obtain a valid license; and (4) Plaintiff had known about the "lien" on his license for four months, yet had not kept his employer informed as to this problematic status, nor had he in fact obtained a license despite having had four months in which to do so. Abdulahi and German are not similarly situated to Plaintiff "in respect to relevant facts and circumstances"-- the fact that they were suspended instead of fired, based on differing facts and circumstances, lends no support to Plaintiff's claim.[7]

---

[6] To the extent that Plaintiff's claim is based on race, Mr. Abdulahi (like Plaintiff) is also African-American, and therefore any difference in treatment does not support a claim of race discrimination.

[7] Plaintiff likewise cannot show that he was treated less favorably than other employees in regard to being given an "opportunity" to renew or obtain a valid driver's license, after being caught without one. First, Plaintiff has no evidence (or even a speculative guess) concerning how much of an opportunity, if any, Verdi or the unnamed other
*(Footnote continued on next page)*

Plaintiff has also alleged, based on pure speculation, that a former Central Parking employee named Guiseppe Verdi was treated more favorably; however, Plaintiff has not produced any demonstrable facts to support this claim. Indeed, Plaintiff has no evidence, much less admissible evidence, that Verdi ever had a "problem" with his license, or that Central Parking management knew about such an alleged problem.[8] In contrast, the undisputed record evidence demonstrates that Plaintiff has his facts wrong. Guiseppe Verdi quit his employment with Central Parking in March, 2002, over a year before the May, 2003 driver's license audit. Verdi could not have been included in the May, 2003 driver's license audit as he was not even employed at that time and, therefore he was not similarly situated to Plaintiff.[9] Further, there is no evidence that Central Parking ever learned of any "problem" with Verdi's license, and his personnel record reveals that he was never suspended for not having a license (as Plaintiff alleges). Stmt. ¶25.

Plaintiff's astounding lack of knowledge regarding Verdi's circumstances makes plain the absurdity of his allegations. Plaintiff testified at deposition that he did not know:

---

*(Footnote continued from previous page)*
employee was given to obtain a valid license. Second, as discussed above, not only are the two valet employees not similarly situated to Plaintiff due to their non-managerial status, and other reasons discussed above, but they were both able to produce a valid license within a week after the May, 2003 audit. In sharp contrast, the "lien" on Plaintiff's license created a possibly insurmountable obstacle to Plaintiff ever getting a valid license. Further, Plaintiff was in fact unable to get a valid license not only between January, 2003 and the May, 2003 audit, but also failed to remedy his situation between May 22, 2003 (the date of his meeting with Mr. Crean and Ms. Poliseno) and when Central Parking terminated him from employment on June 2, 2003. It is apparent that an "opportunity" to get a valid license would not have helped Plaintiff, because (1) Central Parking terminated his employment based on his lies, not just his license status, and (2) the week's time the valet drivers used to obtain valid licenses would not have been a sufficient amount of time for Plaintiff to remove the lien and get a valid license. In any case, Plaintiff cannot show that any similarly situated employees were treated more favorably than he in this regard, and therefore his claim must be dismissed.

[8] While Plaintiff claims that Verdi told him he did not have a license, such an allegation is inadmissible hearsay and cannot be relied upon to survive summary judgment.

[9] Indeed, the EEOC specifically found that Plaintiff's allegation that Verdi was treated differently than he was did not support his claim, because Verdi's employment with Central Parking ended before the May, 2003 audit. *See* EEOC Decision, <u>Exhibit</u> B to Kahn Aff.

- whether Central Parking was aware of Verdi's alleged lack of a driver's license;
- how long Verdi needed to fix the alleged problem;
- how long Verdi had allegedly been without a driver's license;
- whether Verdi withheld information from Central Parking about his situation;
- whether Verdi was part of the May, 2003 audit;
- whether Verdi's job involved moving cars.[10]

In light of the many differences between Plaintiff's alleged, unsupported <u>speculation</u> regarding Verdi, and the undisputed <u>facts</u> concerning Plaintiff's conduct, Plaintiff clearly cannot show that he was similarly situated to Verdi.[11]

### 2. Plaintiff Cannot Survive Summary Judgment By Claiming that He Did Not Lie To Defendant.

After Central Parking discovered that Plaintiff lacked a valid driver's license and had so for months, Ed Crean, Senior Director of Operations for Central Parking, concluded that Plaintiff's withholding of this significant information was tantamount to lying to his employer. Central Parking categorized Plaintiff's misconduct on his Employee Separation Report as "falsification of records and misrepresentation of fact." In his opposition, Plaintiff likely will seek to distract the Court with a frivolous exercise in semantics by arguing that his admitted withholding of information does not constitute a "falsification of records and misrepresentation of fact" and, therefore, such reasons are pretext for discrimination. However, such a misguided claim has no merit. First, Plaintiff's employment with Central Parking was at-will – he could be terminated at any time, for any reason. Second, Central Parking's employee handbook expressly

---

[10] Yohannes Dep. I, pp. 23-24; Yohannes Dep. II, p. 104.

[11] Indeed, given that Plaintiffs entire claim is dependent upon his allegation that he was treated differently than Verdi, his unmitigated inability to support his claim with any but the most speculative evidence suggests that sanctions may be appropriate.

states that the list setting forth conduct which could lead to immediate discharge is not all-inclusive; whether or not Plaintiff engaged in any of the identified acts, he could still be immediately discharged at Central Parking's discretion.[12] Third, it is undisputed that Central Parking, through its decisionmaker Ed Crean, <u>believed</u> that Plaintiff had falsified records and misrepresented facts by withholding critical information concerning his license from his employer. *See Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1118 (1st Cir. 1993) (focus must be on perception of decisionmaker). To paraphrase a recent First Circuit decision, it does not matter whether Central Parking was right in perceiving Plaintiff as a liar; it is enough that Central Parking so believed. *See Joyal v. Hasbro, Inc.*, 380 F.3d 14, 19 (1st Cir. 2004) (affirming summary judgment for employer). Whether Central Parking "was fair or wise" in concluding that Plaintiff's admitted conduct amounted to lies (of omission or otherwise) does not matter to this claim. *Id.* As in *Joyal*, Plaintiff cannot point to any record evidence that would entitle a jury to find that Central Parking did not in fact believe the reason it gave for Plaintiff's termination, or that it otherwise based its decision upon Plaintiff's race, color, or national origin.[13]

While Plaintiff may assert that his admitted conduct did not warrant his termination, he cannot produce any evidence, much less prove, that Central Parking did not reach a good faith conclusion that Plaintiff's actions (or inactions, as the case may be) were unacceptable in a

---

[12] Plaintiff's Complaint indicates that Plaintiff may be confusing the standard applied by the Department of Unemployment Assistance (concerning whether an employee is entitled to unemployment benefits) with that required of a plaintiff attempting to prove discrimination under Title VII.

[13] A related and equally immaterial issue may arise if Plaintiff insists, despite his deposition testimony to the contrary, that he informed Central Parking of his license status in March, 2003, prior to the May, 2003 audit. Although Plaintiff's attorney made this argument on his behalf in his Complaint, at Plaintiff's deposition Plaintiff clearly testified that the first time he told anyone about the problem with his driver's license was in May, 2003, after Ms. Poliseno wrote the memo requesting the driver's license audit, when Plaintiff spoke to Mr. Caliri about the problem. Stmt. ¶13. Plaintiff expressly denied that this conversation with Mr. Caliri was in March (and, in fact, in
*(Footnote continued on next page)*

management employee. Central Parking has the right to draw its own conclusions, and make its own judgments, about whether Plaintiff's conduct should have resulted in termination or any other discipline. Plaintiff cannot be allowed to attempt to second guess Central Parking's management decisions through meritless litigation – courts "may not sit as super personnel departments, assessing the merits – or even the rationality – of employers' nondiscriminatory business decisions." *Mesnick v. General Electric Co.*, 950 F.2d 816, 825 (1st Cir. 1991).

### 3.  Plaintiff Has No Evidence of Discriminatory Animus

It is abundantly clear that Plaintiff has no evidence that the decisionmaker in this case, Ed Crean, had any discriminatory animus towards him because of his race, color, or national origin. Plaintiff conceded that, apart from brief exchanges of pleasantries, he had essentially no contact with Mr. Crean prior to the May, 2003 audit, nor did he have any reason to believe Mr. Crean was biased against him other than the fact that Mr. Crean terminated his employment in May, 2003. Plaintiff admitted that Mr. Crean never said anything to him that was discriminatory, and never made any racial slurs. Stmt. ¶28. Indeed, Plaintiff's own witness, Solomon Lemma, a former Central Parking manager (who, like Plaintiff, is Ethiopian), testified to his good relationship with Ed Crean, and described how Mr. Crean supported him in his efforts to advance himself in the company, including helping him to take language courses which increased his ability to climb the corporate ladder. Stmt. ¶31.[14] Plaintiff simply has no evidence whatsoever that his termination was motivated by discriminatory bias, and his claim should therefore be dismissed.

---

*(Footnote continued from previous page)*
his Complaint he claimed he had spoken with Mr. Crean in March, which is patently untrue). Both Mr. Crean and Mr. Caliri deny knowing about any problem with Plaintiff's license prior to the May, 2003 audit. Stmt. ¶12.

[14] According to Plaintiff, Mr. Lemma would testify "exactly and precisely" that Mr. Crean discriminated against Ethiopians. *See* Yohannes Dep. II, p. 25. Of course, just the opposite was the case.

## CONCLUSION

"Over time, summary judgment has proven its usefulness as a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce resources in more beneficial ways." *Mesnick v. General Electric Co.*, 950 F.2d 816, 822 (1st Cir. 1991). Because Plaintiff cannot win at trial, and for the foregoing reasons, Defendant respectfully requests that the Court grant its Motion for Summary Judgment and dismiss Plaintiff's Complaint in its entirety.

KINNEY SYSTEM, INC. d/b/a
CENTRAL PARKING SYSTEM OF
MASSACHUSETTS

By its attorneys,

*/s/ Mark H. Burak*
Mark H. Burak, BBO# 558805
Sandra E. Kahn, BBO # 564510
MORSE, BARNES-BROWN & PENDLETON, P.C.
Reservoir Place
1601 Trapelo Road
Waltham, MA 02451
(781) 622-5930
(781) 622-5933 (facsimile)

Dated: March 9, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by first class mail on March 9, 2005.

*/s/ Sandra E. Kahn (MHB)*
Sandra E. Kahn