UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEMEREW W. YOHANNES,<br><br>        Plaintiff,<br><br>v.<br><br>CENTRAL PARKING SYSTEMS, INC.<br><br>        Defendant. | Civil Action No. 03-12390 NG |

### DEFENDANT'S CONCISE STATEMENT OF MATERIAL FACTS

Pursuant to L.R. 56.1, Defendant hereby submits this Concise Statement of Material Facts of record, as to which there is no genuine issue to be tried, in support of its Motion for Summary Judgment.

### MATERIAL FACTS

1. Defendant Central Parking System of Massachusetts, Inc. ("Central Parking") operates pay parking facilities throughout Massachusetts. Central Parking's North End Garage, located in Boston, Massachusetts, is a valet parking facility, where Central Parking employees, not the customers, park customer cars. Affidavit of Edwin Crean, attached hereto as Exhibit 1 (hereafter "Crean Aff.") ¶¶2-3.

2. Plaintiff Demerew Yohannes ("Plaintiff" or "Yohannes") worked at Central Parking's North End Garage beginning in the fall of 2001. Crean Aff. ¶3.

3. Plaintiff's position at the North End Garage was Assistant Manager (also known as Assistant Manager Trainee). Crean Aff. ¶3. Plaintiff was at all times employed at-will. Crean Aff. ¶3; Yohannes Dep. II, p. 43.[1]

4. It was a condition of employment at Central Parking that all management employees, including Demerew Yohannes, have valid driver's licenses. Valet drivers and other employees whose duties included driving cars were also required to have valid driver's licenses. Crean Aff. ¶8; Poliseno Aff. ¶7;[2] Lemma Dep., p. 19.

5. When Plaintiff applied for a position with Central Parking's predecessor company, he indicated on his application that he had a valid driver's license. Yohannes Dep. II, p. 47.

6. In May, 2003, Central Parking conducted a driver's license audit to confirm that its valet garage employees had valid driver's licenses. Crean Aff. ¶4; Poliseno Aff. ¶3. Before May, 2003, Central Parking had not conducted driver's license audits of this kind. Crean Aff. ¶4.

7. Plaintiff was unable to produce a valid driver's license when he as asked to do so as part of the May, 2003 driver's license audit. Crean Aff. ¶¶5-6; Poliseno Aff. ¶4.

8. In May, 2003, Plaintiff admitted to Karen Poliseno, Human Resources Manager for Central Parking, that he did not have a valid driver's license. Yohannes Dep. II, pp. 94-95; *see also* Poliseno Aff. ¶6; Crean Aff. ¶6.

---

[1] Excerpts from Plaintiff's deposition are attached as <u>Exhibit</u> A to the Affidavit of Sandra E. Kahn ("Kahn Aff.) (<u>Exhibit</u> 4 hereto); excerpts from the first day of his deposition will be referred to as "Dep. I," excerpts from the second day of his deposition will be referred to as "Dep. II."

[2] The Affidavit of Karen Poliseno (hereafter "Poliseno Aff.") is attached hereto as <u>Exhibit</u> 2.

9. Plaintiff had moved to Massachusetts on June 4, 2001, but he did not attempt to get a Massachusetts driver's license until January, 2003. Complaint ¶6; Yohannes Dep. II, pp. 51, 87.

10. In a May 22, 2003 meeting with Edwin Crean, Senior Operations Director of Central Parking, and Karen Poliseno, Human Resources Manager for Central Parking, Plaintiff admitted that he had never had a Massachusetts driver's license. Plaintiff stated that he previously had a Connecticut driver's license, which expired in February, 2003. Plaintiff further stated that when he tried to get a Massachusetts driver's license, he learned that there was a "lien" on his license and that he could not, therefore, get a Massachusetts license at that time. Crean Aff. ¶6; Poliseno Aff. ¶6. Plaintiff learned about the "lien" on his license in January, 2003, four months before the May, 2003 audit. Yohannes Dep. II, pp. 51, 87.

11. Plaintiff's duties as Assistant Manager at the North End Garage included driving, moving and parking customer cars when necessary. Plaintiff admits that his duties at the North End Garage included moving cars, and that when he worked at the North End Garage he did from time to time move and park customer cars. Yohannes Dep. II, pp. 65-66, 79-80. Plaintiff's manager, Robert Caliri, observed Plaintiff moving customer cars on many occasions, both before and after February, 2003. Affidavit of Robert Caliri (hereafter "Caliri Aff.") ¶¶5, 10.[3]

12. Neither Mr. Caliri nor Mr. Crean knew Plaintiff did not have a valid driver's license until the driver's license audit was conducted in May, 2003. Caliri Aff. ¶8; Crean Aff. ¶6.

13. Plaintiff testified at his deposition that the first time he told anyone about his lack of a driver's license was in May, 2003, <u>after</u> Ms. Poliseno wrote the May, 2003 memo requesting

---

[3] Attached as <u>Exhibit</u> 3 hereto.

the driver's license audit, when he spoke to Mr. Caliri about the problem. Yohannes Dep. II, pp. 90-91.

14.     As a management employee, Plaintiff was expected to enforce Central Parking's policies, as well as obey them. Crean Aff. ¶9.

15.     Central Parking requires that employees keep their employer informed of any changes in their status. Central Parking's Employee Handbook contains a policy setting forth this requirement. Crean Aff. ¶9 and Exhibit A thereto.

16.     After Mr. Crean's investigation into Plaintiff's situation, including learning from Plaintiff in May, 2003 that (i) Plaintiff had never had a valid Massachusetts driver's license despite having moved to Massachusetts in June, 2001 (two years ago), (ii) Plaintiff's Connecticut driver's license expired in February, 2003, and (iii) Plaintiff had learned that the "lien" on his license prevented him from getting a Massachusetts license, Mr. Crean became convinced that Plaintiff had essentially lied to his employer concerning the status of his driver's license because he concealed these facts from Central Parking. Crean Aff. ¶11.

17.     Plaintiff had violated Central Parking's requirement that management employees have valid driver's licenses. Crean Aff. ¶¶8-9.

18.     Further, Mr. Crean believed that Plaintiff had misrepresented facts and falsified records by working without a valid driver's license and keeping silent regarding the status of his driver's license, especially since he was a management employee who was charged with enforcing company policies. Crean Aff. ¶¶9-11.

19.     Mr. Crean therefore recommended to Michael Beck, Regional Manager, that Plaintiff's employment with Central Parking be terminated. Mr. Beck approved this action, and Plaintiff's employment was terminated as of June 2, 2003. Crean Aff. ¶18.

20. As a result of the May, 2003 audit Central Parking learned that two other employees besides Plaintiff were not able to produce valid driver's licenses. These two valet drivers, Abdurashid Abdulahi and Rafael German, both had Massachusetts licenses that had expired. They both renewed their Massachusetts licenses within a week after the audit. These employees both received written warnings for failing to have a valid driver's license in their possession, which was a requirement of their job. Poliseno Aff. ¶¶4-5.

21. The Company determined to discharge Plaintiff, an assistant manager, rather than suspend him as it did the two valet drivers, Mr. Abduhali and Mr. German, for several reasons. Primary among these reasons was that Plaintiff held a managerial position and, as such, was expected to enforce company policies. Further, Mr. Crean believed that Plaintiff had essentially lied to Central Parking about the status of his driver's license by failing to advise the Company that he did not have a valid license and that he had a serious impediment to obtaining a license, and not updating his personnel record to reflect this. Crean Aff. ¶¶8-11.

22. Additionally, unlike Mr. Abdulahi and Mr. German, Plaintiff had never had a Massachusetts driver's license, and was unable to simply obtain a Massachusetts license because of the "lien." Poliseno Aff. ¶¶4-7.

23. Plaintiff testified that between January, 2003, and May, 2003, he was trying to get a valid driver's license, but that he hadn't been able to get the lien removed. Yohannes Dep. II, p. 101.

24. Central Parking Equal Employment Opportunity records indicate that Abdurashid Abdulahi is African-American, and Rafael German is Hispanic. Crean Aff. ¶13.

25. Guiseppe Verdi was employed by Kinney System and then Central Parking from October 15, 1997 through March 13, 2002. At no time did Central Parking have any reason to

believe that Mr. Verdi did not have a driver's license. There is no record in Central Parking's personnel file for Mr. Verdi concerning any alleged suspension for not having a driver's license. Mr. Verdi's employment with Central Parking ended on March 13, 2002, over a year before the May, 2003 driver's license audit. Crean Aff. ¶16.

26.    Plaintiff did not complain to anyone at Central Parking about alleged discrimination. Yohannes Dep. I, p.25.

27.    On August 27, 2003, the Equal Employment Opportunity Commission dismissed Plaintiff's charge of discrimination against Central Parking, making the following determination: "Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes…" *See* Exhibit B to Kahn Aff. (attached hereto as Exhibit 4), EEOC Dismissal and Notice of Rights; August 27, 2003 EEOC Decision.

28.    Plaintiff admits that he does not have any facts on which to base his allegation that Mr. Crean discriminated against him except for the fact that Central Parking terminated his employment. He further admits that Mr. Crean never said anything to him that was discriminatory and never made any racial slurs towards him. Yohannes Dep. I, p. 31. Plaintiff conceded that, apart from brief exchanges of pleasantries, he had essentially no contact with Mr. Crean prior to the May, 2003 audit, nor did he have any reason to believe Mr. Crean was biased against him before May, 2003. Yohannes Dep. I, p. 34-35.

29.    Plaintiff admits that he has no reason to believe his direct supervisor, Robert Caliri, was biased against him because of his race. Yohannes Dep. I, p. 35

30.    Plaintiff understood that Central Parking's employee handbook set forth examples of conduct which could result in immediate termination, including falsification of records and misrepresentation of facts. Plaintiff understood that this list of conduct which could result in

immediate termination was not intended to be all-inclusive, as expressly stated in the policy, and that other conduct could also result in immediate termination from employment. Yohannes Dep. II, p. 83-84.

31.     Solomon Lemma, a former Central Parking employee of Ethiopian national origin, who was identified by Plaintiff as a witness that would support his claims of discrimination, testified at a deposition in this matter on October 25, 2004. Mr. Lemma started at Kinney Systems (later acquired by Central Parking) as a parking attendant and cashier, held positions as assistant manager and manager, then city manager and regional manager, and rose to the position of Operations Manager of Central Parking's MBTA locations. Mr. Lemma testified that Mr. Crean supervised him for six years during the time they worked together for Kinney Systems, and that during that time Mr. Crean hired him and then promoted him to manager of several facilities of increasing size, with accompanying pay increases. Mr. Lemma further testified that Mr. Crean treated him fairly, that he supported Mr. Lemma in his effort to take language courses paid for by Kinney Systems, and that Mr. Crean supported his efforts to rise in the organization. Mr. Lemma never felt that anyone at Kinney System, including Mr. Crean, discriminated against him because he was Ethiopian. Deposition of Solomon Lemma (hereafter "Lemma Dep.") pp. 12-17.[4]

32.     Mr. Lemma, whose roles included assistant manager of the garage at 1000 Massachusetts Avenue, manager of the Cambridge Center garage, city manager, regional manager, and then Operations Manager of Central Parking's MBTA locations, testified that as an assistant manager, his job involved parking cars. Lemma Dep., pp. 16, 18. He further testified that it was a

---

[4] Excerpts from the Lemma Dep. are attached as Exhibit C to the Kahn Aff.

requirement of the job at that time that employees at valet locations have valid driver's licenses, and that he would only hire employees with driver's licenses. Lemma Dep., p. 19.

33.  Ayelew Makonnen, a former Central Parking employee of Ethiopian national origin identified by Plaintiff as a witness who would support his claim of discrimination, was deposed in this matter on October 21, 2004. Mr. Makonnen last worked for Central Parking in November, 1998, approximately four and a half years before Plaintiff's termination from employment. Mr. Makonnen was not involved with Plaintiff's termination; the only information he has about Plaintiff's termination comes from Plaintiff himself. Deposition of Ayelew Makonnen (hereafter "Makonnen Dep.") p. 11-12.[5] Mr. Makonnen does not have any reason to believe that Plaintiff was terminated because he is Ethiopian. Makonnen Dep., p. 20. Makonnen testified that it was part of his job as night manager to help move customer cars if necessary. Makonnen Dep. pp. 32-33. Makonnen testified that he does not believe he was terminated from employment because of his Ethiopian national origin. Makonnen Dep., pp. 39-40.

34.  Mussie Gizaw, a former Central Parking employee of Ethiopian national origin identified by Plaintiff as a witness who would support his claim of discrimination, was deposed in this matter on October 25, 2004. Central Parking terminated Gizaw's employment in September, 1999, almost three and a half years before Plaintiff was terminated in June, 2003. Deposition of Mussie Gizaw (hereafter "Gizaw Dep.") p. 16.[6] As a manager working for Central Parking, Gizaw was aware that employees working at valet parking locations were required to have a valid driver's license. Gizaw Dep., pp. 17-18. Gizaw agreed that Plaintiff was required to have a valid driver's license in his position. Gizaw Dep., p. 20. Gizaw does not know any

---

[5] Excerpts from the Makonnen Dep. are attached as Exhibit D to the Kahn Aff.
[6] Excerpts from the Gizaw Dep. are attached as Exhibit E to the Kahn Aff.

details about why Central Parking terminated Plaintiff's employment, and has no personal knowledge of the circumstances surrounding his termination. Gizaw Dep. pp. 18-20. Central Parking terminated Mr. Gizaw's employment in September, 1999 when, after a period of poor performance, Mr. Gizaw refused to work his scheduled hours. Crean Aff. ¶17.

        KINNEY SYSTEM, INC. d/b/a
        CENTRAL PARKING SYSTEM OF
        MASSACHUSETTS

        By its attorneys,

        */s/ Sandra E. Kahn*
        Mark H. Burak, BBO# 558805
        Sandra E. Kahn, BBO # 564510
        MORSE, BARNES-BROWN & PENDLETON, P.C.
        Reservoir Place
        1601 Trapelo Road
        Waltham, MA 02451
        (781) 622-5930
        (781) 622-5933 (facsimile)

Dated: March 9, 2005

### CERTIFICATE OF SERVICE

    I hereby certify that a true copy of the above document was served upon the attorney of record for each party by first class mail on March 9, 2005.

        */s/ Sandra E. Kahn*
        Sandra E. Kahn