**EXHIBIT 1 TO STATEMENT OF FACTS**

**Affidavit of Edwin B. Crean**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DEMEREW W. YOHANNES,

        Plaintiff,

v.

CENTRAL PARKING SYSTEMS, INC.

        Defendant.

Civil Action No. 03-12390 NG

### AFFIDAVIT OF EDWIN B. CREAN

I, Edwin B. Crean, under oath do hereby depose and say as follows:

1.     I make this affidavit upon personal knowledge and if called to testify can do so competently to the matters stated herein.

2.     I am Senior Director of Operations for Central Parking System of Massachusetts ("Central Parking"). Central Parking operates pay parking facilities throughout Massachusetts. As Senior Director of Operations, a position which I have held since March 1998, I am responsible for overseeing approximately forty parking facilities run by Central Parking in the greater Boston area, including Central Parking's North End Garage, located in Boston, Massachusetts. I have worked for Central Parking since September, 1992. Prior to that, I worked from July 1985 to June, 1991 for Kinney System and Meyers Parking from July 1991 to August 1992 (which was acquired by Central Parking System in late 1992).

3.     Demerew Yohannes worked at Central Parking's North End Garage beginning in the fall of 2001 as an Assistant Manager (also called an Assistant Manager Trainee). The North End Garage is a valet parking garage, where Central Parking employees, not the customers, park customer cars. At all times, Central Parking employed Mr. Yohannes on an at-will basis.

4. In May, 2003, the then Regional Manager of Central Parking, Michael Beck, directed Karen Poliseno, the then Human Resources Manager of Central Parking, to conduct an audit of employee driver's licenses at all valet parking facilities operated by Central Parking. In response to this directive, Ms. Poliseno asked the managers of valet parking facilities to submit copies of the driver's licenses for all valet and management employees. Before May, 2003, Central Parking had not conducted a region-wide, formal driver's license audit of this kind.

5. In connection with the May, 2003 driver's license audit Ms. Poliseno brought to my attention the fact that Mr. Yohannes was unable to produce a valid driver's license during this audit.

6. I directed Ms. Poliseno to set up a meeting between myself, Ms. Poliseno and Mr. Yohannes, to discuss his inability to produce a valid driver's license. At that meeting, which was held on May 22, 2003 in my office, I learned (for the first time) from Mr. Yohannes that he had never obtained a Massachusetts drivers' license, despite having moved to Massachusetts two years ago in the spring of 2001, and having worked for Central Parking at the North End garage as an Assistant Manager since 2001. Instead, Mr. Yohannes stated that he had continued to use his Connecticut drivers' license, which had expired in February, 2003 – he asserted that he did not realize he needed a Massachusetts license. Further, Mr. Yohannes informed us that he could not get a Massachusetts driver's license – he claimed that when he had tried to do so following the expiration of his Connecticut license, he had been told that there was a "lien" on his license due to an out of state automobile accident he had years ago.

7. Following the May 22, 2003 meeting with Mr. Yohannes, I contacted Mr. Robert Caliri, the Manager of the North End garage and Mr. Yohannes' direct supervisor. Mr. Caliri

2

told me that at no time before he conducted the driver's license audit in May, 2003 did he know that Mr. Yohannes did not have a valid driver's license. Mr. Caliri also told me that Mr. Yohannes had continued to drive cars as part of his job for Central Parking, despite the fact that (as we had just learned) he had been without a valid driver's license. I instructed Mr. Caliri to tell Mr. Yohannes not to drive any customer cars.

8.      It is a condition of employment at Central Parking that all managers, assistant managers, and management trainees of valet parking facilities, as well as all valet drivers, have valid driver's licenses. Based on conversations with Mr. Yohannes, I understood that he could not simply obtain a valid Massachusetts driver's license, because of the "lien" on his license. Moreover, it was clear that Mr. Yohannes had known about the "lien" on his license for some time, yet he had failed to tell his employer about this problem.

9.      As an Assistant Manager, Mr. Yohannes was expected to not only follow but also to enforce Central Parking policies and procedures. Mr. Yohannes had violated Central Parking's policy requiring management employees to have valid driver's licenses (and had apparently been driving customer cars without any license since his Connecticut license expired in February, 2003). Additionally, Mr. Yohannes' conduct in keeping silent about his license status was a violation of Central Parking's policy that employees keep their employer informed of any changes in their status (set forth in Central Parking's Employee Handbook, and attached hereto as Exhibit A). Further, I believed that Plaintiff had violated Central Parking's policy prohibiting misrepresentation of facts and falsification of records (set forth in Central Parking's Employee Handbook, and attached hereto as Exhibit B) by working without a valid driver's license and keeping silent regarding the status of his driver's license, especially since he was a management employee who was charged with enforcing company policies.

3

10. I was also not satisfied with Mr. Yohannes' explanation for why he had not gotten a Massachusetts driver's license when he moved to Massachusetts two years earlier. As he had told us that he had changed his address, his insurance, his car registration, and his wife had changed her license to a Massachusetts license, it seemed disingenuous for him to insist that he didn't realize he had to switch to a Massachusetts license when he moved here.

11. After the investigation into Mr. Yohannes' situation, including learning from Mr. Yohannes in May, 2003 that (i) he never had a valid Massachusetts driver's license despite having moved to Massachusetts in June, 2001 (two years ago), (ii) his Connecticut driver's license had expired in February, 2003, and (iii) he knew that the "lien" on his license prevented him from getting a Massachusetts license, I became convinced that Mr. Yohannes had essentially lied to Central Parking concerning the status of his driver's license. Because of all these circumstances, I believed that Mr. Yohannes engaged in "misrepresentation of facts and falsification of records," a separate violation of Central Parking policy, in addition to having violated Central Parking policy by not having a valid driver's license. I therefore recommended to Michael Beck, Regional Manager, that Mr. Yohannes's employment with Central Parking be terminated. Mr. Beck, as was typical in these situations, approved this action, and Mr. Yohannes' employment was terminated as of June 2, 2003.

12. Ms. Poliseno and I met with Mr. Yohannes on June 2, 2003 to inform him of Central Parking's decision. Mr. Yohannes' "Employee Separation Report" (attached hereto as Exhibit C ) which Mr. Yohannes was shown but refused to sign, documents his termination. At this time, Mr. Yohannes still did not have a valid driver's license, nor was he able to tell us when he would be able to obtain one.

13.     Central Parking records indicate that two other employees, Abdurashid Abdulahi and Rafael German, were also unable to produce driver's licenses in connection with the May, 2003 audit. These rank and file employees were valet drivers at the time. Each was issued a written warning. It is my understanding, based upon the affidavit of Karen Poliseno, that both employees were able to produce a valid driver's license within a week of the audit. Central Parking Equal Employment Opportunity records further indicate that Mr. Abdulahi is African-American, and Mr. German is Hispanic.

14.     The decision to terminate Mr. Yohannes' employment had nothing to do with his race, color, or national origin.

15.     Kinney System and Central Parking have retained and promoted many black and Ethiopian employees over the years. For example, Solomon Lemma, a black Ethiopian individual identified by Plaintiff as a witness in support of his case, testified at his deposition that he rose through the ranks of Kinney System and Central Parking, receiving multiple promotions and wage increases. Indeed, Mr. Lemma testified that during the time we worked together I promoted him several times to management positions in facilities of increasing size, with accompanying pay raises. Mr. Lemma eventually became Operations Manager of Central Parking's MBTA locations. Mr. Lemma denied he had experienced any discrimination at Central Parking. Mr. Lemma and I worked together closely for many years, and Mr. Lemma confirmed in his testimony that I had supported his efforts to rise in the company. Mr. Lemma denied that I had ever discriminated against him on the basis of his Ethiopian national origin.

16.     Guiseppe Verdi was employed by Kinney System and then Central Parking from October 15, 1997 through March 13, 2002. At no time did Central Parking have any reason to believe that Mr. Verdi did not have a driver's license. As Senior Director of Operations for

Central Parking during the time Mr. Verdi was employed with Central Parking, I was responsible for overseeing the parking facilities where Mr. Verdi worked (including the North End Garage and the Devonshire Garage), yet I never learned of any problem with his license. There is no record in Mr. Verdi's file concerning any alleged suspension for not having a driver's license. Mr. Verdi's employment with Central Parking ended on March 13, 2002, over a year before the May, 2003 driver's license audit.

17.    Mussie Gizaw is a former Central Parking employee. Central Parking terminated Mr. Gizaw's employment in September, 1999 when, after a period of poor performance, Mr. Gizaw refused to work his scheduled hours.

Signed under the pains and penalties of perjury,

_____          3/2/05_____
Edwin B. Crean                                                    Date