**EXHIBIT 3 TO STATEMENT OF FACTS**

<u>**Affidavit of Robert J. Caliri**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEMEREW W. YOHANNES,<br><br>        Plaintiff,<br><br>v.<br><br>CENTRAL PARKING SYSTEMS, INC.<br><br>        Defendant. | Civil Action No. 03-12390 NG |

### AFFIDAVIT OF ROBERT J. CALIRI

I, Robert J. Caliri, do hereby state and depose as follows:

1. I make this affidavit upon personal knowledge and if called to testify could do so competently to the matters stated herein.

2. I am a manager for Central Parking System at the North End Garage. I supervised Demerew Yohannes from approximately the fall of 2001 through his discharge from employment on June 2, 2003.

3. The North End Garage is a valet parking garage. This means that Central Parking employees, not the customers, park the cars in the parking spaces (except with regard to customers with monthly parking spaces).

4. Mr. Yohannes worked for me as an Assistant Manager at the North End Garage. His duties included supervising the valet employees, performing administrative tasks such as compiling daily reports and collecting payments from monthly parkers, and parking and moving cars on a regular basis.

5. On many occasions, I observed Mr. Yohannes driving customer cars. It is likely that he had to park or move a car at least once almost every day that he worked. There were also times when Mr. Yohannes would be the only employee available to park or move cars. For example, Mr. Yohannes's schedule in the North End Garage included working on Sundays from noon- 8:00 p.m. There was only one other attendant on duty from 7:00 a.m. – 3:00 p.m.; if that attendant needed to take a bathroom break or to leave the garage for lunch, Mr. Yohannes would be the only employee available to park or move cars. This schedule was in place throughout Mr. Yohannes' employment at the North End Garage. These were not the only times that Mr. Yohannes had to drive customer cars, however, as parking and moving cars when necessary was part of his job. Further, on one particular occasion, I observed that Mr. Yohannes had trouble driving a car with a manual shift, and I mentioned this observation to Karen Poliseno, Central Parking Human Resources Manager.

6. Central Parking requires that all management staff have a valid driver's license. Further, any employee whose duties involve driving cars must have a valid driver's license.

7. In May, 2003, I was asked by Karen Poliseno, Central Parking Human Resources Manager, to conduct a driver's license audit and to send her copies of each employee's driver's license. Mr. Yohannes was unable to present a driver's license when I first asked him to do so, and I recall that he made some excuse about not having his license with him and that is why he could not show it to me. Several days later, I told him again that I needed to see his driver's license. Mr. Yohannes then told me that he had a problem, and that he did not have a driver's license. I told him that he needed to contact Karen Poliseno to discuss this with her.

TOTAL P.04

8.  At no time before I conducted the driver's license audit in May, 2003 did I know that Mr. Yohannes did not have a valid driver's license. Mr. Yohannes never told me in March, 2003 or at any time prior to the audit that he did not have a valid driver's license.

9.  In late May, 2003, Ed Crean, Senior Director of Operations, talked with me about Mr. Yohannes' situation. Mr. Crean asked me if Mr. Yohannes had told me, prior to the audit, that he did not have a valid driver's license. I told Mr. Crean that Mr. Yohannes did not tell me about any problem with his license until after I conducted the driver's license audit in May, 2003.

10.  On many occasions, before and after February, 2003, I observed Mr. Yohannes driving customer cars.

Signed under the pains and penalties of perjury, this 28th day of FEBRUARY, 2005.

_____
Robert J. Caliri

FEB-24-2005 14:27    MBBP    781 697 2290    P.04/04